UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DELAINA A. MALCOLM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:06-CV-373 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's motion for summary judgment [Doc. 16] and the defendant's motion for summary judgment. [Doc. 18]. Plaintiff Delaina A. Malcolm ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner ("the Commissioner").

**I.    ALJ Findings**

ALJ John McFadyen made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through September 30, 2000.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 C.F.R. §§ 404.1520(b) and 416.620(b)).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. §§ 404.1527 and 416.927).

7. The claimant retains the residual functional capacity to perform light work.

8. The claimant's past relevant work as a traffic clerk and customer courtesy clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(e) and 416.920(e)).

[Tr. 27].

## II.     Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 1142 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §404.1520). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.     Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion and whether the ALJ applied proper legal standards. Key v. Callahan, 109 F.3d 273 (6th Cir. 1997).

Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "[m]ore than a mere scintilla, but less than a preponderance of evidence." Bruce v. Sec'y of Health & Human Servs., 52 F.3d 324, 1995 WL 154891, at *2 (6th Cir. Apr. 6, 1995) (per curiam). To determine whether substantial evidence exists, the Court must review the administrative record as a whole. Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001); see also Her, 203 F.3d at 389-90 (holding that "even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached"); Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of . Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## **IV.** **Arguments**

Plaintiff argues on appeal that substantial evidence did not support the decision of the ALJ, because the ALJ erred by: (A) failing to properly evaluate Plaintiff's insured status for disability benefits; (B) failing to find Plaintiff's mental impairments to be severe and in failing to consider their effects on her ability to work; (C) failing to accord proper weight to the medical opinions of record; and (D) assessing a residual functional capacity ("RFC"), which is not supported by substantial evidence. [Doc. 17]. The Commissioner contends that substantial evidence supports the

4

ALJ's decision regarding the issues presented on appeal by Plaintiff. Specifically, the Commissioner argues that substantial evidence exists to support the ALJ's findings at Step Two, regarding Plaintiff's mental condition analysis, and his finding at Step Four, stating that Plaintiff could return to her past relevant work as a traffic clerk or customer courtesy clerk. [Doc. 19].

  **A.** **Plaintiff's Insured Status**

Plaintiff argues, and the Commissioner concedes, that the ALJ failed to properly state Plaintiff's insured status for disability benefits. [Docs. 17, 19]. The Court finds that it appears the ALJ incorrectly noted that Plaintiff was last insured for disability benefits on September 30, 2000, when September 30, 2003, is the correct date. [Tr. 21, 35, 63]. Accordingly, the Court finds that Plaintiff was last insured for disability benefits on September 30, 2003.

  **B.** **Plaintiff's Mental Impairments**

Plaintiff argues the ALJ erred in failing to find Plaintiff's mental impairments to be severe and in failing to consider their effects on her ability to work. [Doc. 17]. The Commissioner argues that substantial evidence exists to support the ALJ's finding that Plaintiff does not have severe mental impairments and that mental impairments do not affect her ability to work. [Doc. 19].

Though Plaintiff's counsel argues that Plaintiff's mental impairments are severe and have a significant impact upon her ability to work, as the Commissioner well-noted, Plaintiff herself has generally denied suffering from a mental impairment. On a Disability Report, dated March 13, 2003, Plaintiff alleged that she has been disabled since July 15, 2000 due to a dysfunctional pituitary gland, possible Addison's Disease, heart problems, and heat problems. [Tr. 55-56]. No psychiatric problems were noted. [Id.]. In her request for a hearing by an administrative law judge, dated April 5, 2004, Plaintiff stated that she did not file any papers on psychotic or mental diseases because her

disease is that her pituitary gland has stopped working. [Tr. 47]. However, on an activities of daily living questionnaire, Plaintiff claims that depression, allegedly resulting from human growth deficiency, keeps her from working. [Tr. 66]. Plaintiff claimed that the depression stems from a human growth hormone deficiency, which began in 1996; the Court notes that Plaintiff worked in 1997, 1998, and 2000 [Tr. 56, 66]. On May 6, 2004, she stated, "I have filed Disability and have been denied on bases that has [sic] nothing to do with my disease. I filed because I have a disease that has cause[d] vital organ damage and muscle weakness and hormone deficiency[–] not psychotic behaviors. My disease has to do with the pituitary gland." [Tr. 116-17]. Finally, at the hearing on November 5, 2004, Plaintiff stated, in her closing arguments, that she "[d]id not file under a mental illness. I filed under pituitary disease which is lifelong and chronic." [Tr. 352]. It was not until she requested a review of the hearing decision, on March 11, 2005, that she began to argue that emotional conditions prevented her from working. [Tr. 16].[1]

Assuming, arguendo, that Plaintiff has not waived the arguments premised on mental impairment, the Court will assess whether the argument has merit as asserted in Plaintiff's brief. Plaintiff asserts that the ALJ rejected every medical opinion of record and substituted his own opinion when he determined that Plaintiff "[h]as no 'severe' mental impairment imposing significant work-related restrictions on her ability to work." [Tr. 25].

An ALJ must evaluate every medical opinion he receives. 20 C.F.R. §§ 404.1527(d), 416.927(d). When determining whether an impairment exists, licensed physicians and psychologists' opinions can provide evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a),

---

[1]The Court notes that Plaintiff proceeded without counsel throughout the administrative process, but obtained counsel after the ALJ's decision denying her benefits was issued in January 18, 2005.

416.913(a).  When evaluating these opinions, the ALJ must consider the following factors: the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention.  20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6).  Additionally, more weight is given to opinions from treating sources since they are more likely to provide a detailed, longitudinal picture of the claimant's impairments.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ may not, however, assign controlling weight to a treating physician's opinion if that opinion is not supported by sufficient clinical findings, or it is inconsistent with the evidence.  Walters, 127 F.3d at 530.  In addition to the evidence gained from licensed physicians and psychologists' opinions, the opinions of physician's assistants, social welfare agency personnel, and non-medical sources, such as friends, clergy, and family, can be used to evince the severity of an impairment and its effect on the individual's ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d).

When evaluating whether the ALJ's decision is supported by substantial evidence, the standard is not whether some evidence exists in the record which might support a different conclusion.  Buxton, 246 F.3d at 772.  Instead, the ALJ's decision must be affirmed if the evidence could reasonably support the conclusion reached.  Her, 203 F.3d at 389-90; see also Dorton, 789 F.2d at 367 (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed).  Accordingly, this Court reviews whether substantial evidence exists in the record to reasonably support the ALJ's conclusion that Plaintiff did not have a "severe" mental impairment, as defined by the regulations.

Dr. Mubashir Mahmood ("Dr. Mahmood"), Plaintiff's treating doctor for endocrinology,

consistently noted that Plaintiff suffered from depression and anxiety. [Tr. 205, 290, 295, 314]. He also consistently noted that Plaintiff's depression was stable. [Tr. 195, 200, 204, 289, 292, and 313]. He never made an assessment regarding the severity of her anxiety. [Id.]. The record reflects that Plaintiff was prescribed Wellbutrin and Zoloft, which are primarily used as anti-depressants[2]. [Tr. 274-286]. The record does not reflect a prescription to treat anxiety or a referral to a psychiatrist or psychologist for further treatment.

Other doctors have also noted that Plaintiff is depressed and anxious, but, beyond prescribing Zoloft, no doctor recommended further medication or therapeutic treatment. [Tr. 130, 180]. Of note, William Tucker, a physician's assistant at the Boulevard Family Care Clinic, stated, on April 22, 2003, that Plaintiff does not have an underlying mental disorder which interferes with her functioning. [Tr. 128].

The only person that could perhaps be construed as a treating counselor is Jody Fletcher ("Ms. Fletcher"), a social worker with Jefferson County's Department of Human Services. She stated that Plaintiff's physical illness[3] impacts her mental, emotional, and social aspects of her life. She further opined that Plaintiff experiences significant depression, which is related to her human

---

[2] Wellbutrin is the brand name for Bupropion, which is used to treat depression. National Library of Medicine, MedlinesPlus Drug Information: Bupropion, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a695033.html (last visited July 16, 2007). Zoloft is the brand name for Sertraline, which is used to treat depression, obsessive compulsive disorder, panic attacks, post-traumatic stress disorder, and social anxiety disorder. National Library of Medicine, MedlinesPlus Drug Information: Setraline, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a697048.html (last visited July 16, 2007).

[3] Ms. Fletcher does not state which illness she is referring to, but, presumably, it is Human Growth Hormone Deficiency.

growth hormone deficiency, and that "it is my feeling that she is incapable of sustaining employment at this time." [Tr. 270]

Two consultative examiners assessed Plaintiff's mental abilities. Dr. Abraham, Ph.D., diagnosed Plaintiff as suffering from affective disorder and depression. [Tr. 245-258]. He stated that Plaintiff "[g]enerally appears to be functioning w/o marked mental limitations." [Id.]. Dr. Jodie Castellani, Ph.D., ("Dr. Castellani") diagnosed Plaintiff as having major depression, which was recurrent and moderate in nature. [Tr. 239-244].

After reviewing all of these medical records, the ALJ determined that Plaintiff did not have a "severe" mental impairment. [Tr. 25]. The Court reviewed the entire record as well and finds substantial evidence exists to support the ALJ's determination. The ALJ discredited Dr. Castellani's diagnosis, noting that no treating physician has diagnosed Plaintiff with significant anxiety or depression. [Tr. 24-25]. The medical opinions of treating physicians are accorded substantial evidence. Shelman v. Heckler, 821 F.2d 316, 320 (6th Cir. 1987). Where the treating physician's opinion is supported by sufficient medical data, then the ALJ may not endorse a merely consultative physician's opinion and diagnosis. Id., at 320-21. Dr. Castellani was a consultative physician, and Dr. Mahmood was a treating physician. As such, the ALJ properly afforded more weight to Dr. Mahmood's medical opinion. Moreover, Dr. Castellani's diagnosis, according to the ALJ, appeared to be based on claimant's presentation of the symptoms. [Id.]. A medical source must provide relevant evidence to support his opinion, and Dr. Castellani failed to so in this instance. Walters, 127 F.3d at 530. Accordingly, the ALJ was further entitled to accord lesser weight to Dr. Castellani's findings.

9

As to Ms. Fletcher's opinion, the ALJ noted that it was not supported by clinical findings, as required by the Regulations[4]. [Tr. 25]. Further, Ms. Fletcher, who is not a "medical source" as defined by the regulations, is not qualified to state whether Plaintiff has a medical impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Her testimony is only relevant to the severity of an impairment, which has already been established by a licensed physician, osteopathic doctor, or psychologist. 20 C.F.R. §§ 404.1513(d), 416.913(d).

Additionally, the Court notes that Plaintiff's mental health treatment, or lack thereof, is indicative of the severity of her problems. The record does not reflect any hospitalizations for psychiatric or psychological problems. Her medicinal treatment was relatively modest; she was prescribed Zoloft and Wellbutrin. No doctor referred her for therapy. Moreover, no doctor assessed these conditions as disabling or severe, but for Dr. Castellani, whose opinion was discussed above. For these reasons, the Court finds that Plaintiff did not suffer from a mental impairment which was "severe." As such, Plaintiff's argument fails.

Plaintiff also argues that the ALJ erred by incorrectly assessing the impact of Plaintiff's mental limitations on her ability to work. This matter will be discussed below, in regards to the ALJ's assessment of Plaintiff's RFC.

---

[4] Plaintiff argues that, because Plaintiff was not represented by counsel at the administrative hearing, the ALJ should have specifically requested Ms. Fletcher's medical records to substantiate her opinion. As the Commissioner has well-noted, however, Ms. Fletcher explicitly states in her opinion, "I do not have medical records regarding her case." Therefore, it is clear that any effort to procure further documentation would have been fruitless, and this argument is moot.

## C. According Proper Weight to the Medical Opinions of Record

Plaintiff argues the ALJ erred in failing to accord the proper weight to the medical opinions of record. [Doc. 17]. In response, the Commissioner argues that substantial evidence supports the ALJ's analysis of the medical opinions. [Doc. 19]. As noted above, an ALJ must evaluate every medical opinion he receives, considering the examining relationship, the treatment relationship, the length of treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(d), 416.927(d). More weight is given to opinions from treating sources since they are more likely to provide a detailed, longitudinal picture of the claimant's impairments. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When evaluating whether the ALJ's decision is supported by substantial evidence, the Court must affirm the decision if the record evidence could reasonably support the conclusion reached. Buxton, 246 F.3d at 772; Her, 203 F.3d at 389-90; see also Dorton, 789 F.2d at 367. Accordingly, this Court reviews whether substantial evidence exists in the record to reasonably support the ALJ's conclusion that Plaintiff was not disabled as defined by the regulations.

Plaintiff applied for disability and supplemental social security insurance benefits, alleging an onset date of July 15, 2000.[5] [Tr. 56]. In support thereof, she stated that the illnesses or conditions which limit her ability to work are: "disfunctioning [sic] pituitary gland, checking for

---

[5]Plaintiff stated that her illnesses or conditions first "bothered" her in 1996, but she has been unable to work due to these illnesses or conditions since July 15, 2000. [Tr. 55-56].

11

Addison['s] disease, and heat problems." [Tr. 55].[6] Each of these allegations of disability will be discussed below.

    1.    Dysfunctional Pituitary Gland

Plaintiff's claims that she is disabled because her pituitary gland has ceased functioning. [Tr. 47, 345, 352]. In her disability report of March 18, 2003, Plaintiff averred that a dysfunctional pituitary gland limited her ability to work, starting July 15, 2000. [Tr. 55]. However, Plaintiff noted that her condition started in 1996. [Tr. 66]. On May 6, 2004, Plaintiff stated that she has a hormonal deficiency and that her "[d]isease has to do with the pituitary gland." [Tr. 116-117]. The ALJ determined that the medical evidence indicates that Plaintiff has a growth hormone deficiency, but that it is not severe according to social security regulations. [Tr. 25-26].

Plaintiff's treating physician, Dr. Mahmood, tested Plaintiff's pituitary gland on August 6, 2002, and found that it was of normal size. [Tr. 196, 296]. On October 17, 2003, he stated that Plaintiff was also normal in regards to growth hormones. [Tr. 196]. However, he found on February 9, 2004; August 18, 2004; and October 13, 2004, that Plaintiff suffered from a growth hormone deficiency. [Tr. 291, 296, 315]. On August 18, 2004, Dr. Mahmood noted that Plaintiff had been on a Humatrope[7] regimen and that she had "improved symptomatology." [Tr. 291].

---

[6] In her brief, Plaintiff also asserted that she has severe mental impairments which may allow her to qualify as "disabled" under the social security regulations. [Doc. 19]. The medical opinions of record and the weight attached to each were discussed above in Section IV(B).

[7] Humatrope is a medication which is "[t]herapeutically equivalent to human growth hormone of pituitary origin. . . ." Federal Drug Administration, Humatrope, available at http://www.fda.gov/medwatch/ SAFETY/2004/sep_PI/Humatrope_PI.pdf (last accessed July 18, 2007).

Other doctors made similar diagnoses. Dr. Barry Michelson diagnosed Plaintiff as suffering from "pituitary insufficiency" on March 17, 2003; May 8, 2003; and June 17, 2003. [Tr. 229-33]. On February 20, 2003, Dr. Bennet diagnosed Plaintiff with a partial growth hormone deficiency. [Tr. 178]. Notably, no such diagnosis was made on May 16, 2002 or June 11, 2002. [Tr. 179-180]. Dr. Robert E. Burr, a consultative physician, stated that an endocrine disorder was Plaintiff's primary diagnosis. [Tr. 262]. He provided no proof of how he reached this conclusion. [Id.].

There is nothing in the record to indicate the severity of Plaintiff's human growth hormone deficiency or pituitary gland dysfunction. The record shows that Plaintiff was treated with Humatrope and that her symptoms improved. [Tr. 291]. The record is devoid of any suggestion that Plaintiff's condition is disabling or that further aggressive treatment or testing is needed.[8] Therefore, based on the entire record in this case there is substantial evidence to support the ALJ's finding that Plaintiff is not disabled due to a dysfunctional pituitary gland.

2. Addison's Disease

Plaintiff claims she is disabled because of Addison's disease[9]. [Tr. 55]. The ALJ found, and

---

[8] The Court notes that Ms. Jody Fletcher, a non-medical source, stated on September 5, 2003, that Plaintiff experiences significant depression which is related to a human growth hormone deficiency. [Tr. 270]. She further opined, "It is my feeling that she is incapable of sustaining employment at this time," purportedly based on the effects of her human growth hormone deficiency. [Id.]. However, conclusory allegations that a condition is disabling do not satisfy the requirements of the regulations. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981) (citing to 20 C.F.R. § 404.1527)). Moreover, Ms. Fletcher is not a doctor. [Tr. 270]. Therefore, she may only opine on the severity of an impairment, not its existence. 20 C.F.R. §§ 404.1513(d), 416.913(d).

[9] According to the Mayo Clinic:

> Addison's disease is a disorder that results in your body producing insufficient amounts of certain hormones produced by your adrenal glands. Your adrenal glands are located just above each of your two

13

the record so reflects, that there is no notation indicating Plaintiff has been medically diagnosed as suffering from Addison's disease. [Tr. 24]. On May 5, 2003, Dr. Castellani stated that Plaintiff informed her that doctors were checking to see if Plaintiff suffered from Addison's disease. [Tr. 239]. On June 17, 2003, Dr. Barry Michelson stated that the results of Plaintiff's testing regarding Addison's disease were not available to him.[10] [Tr. 229].

At the administrative hearing, Plaintiff testified that she has growth hormone deficiency and Addison's Disease. [Tr. 345]. Also according to Plaintiff, Dr. Mahmood's notes indicate these diagnoses. [Id.].

The Court notes that Addison's Disease may also be called "adrenal insufficiency" or "hypocortisolism." National Library of Medicine, MedlinesPlus: Addison's Disease, http://www.nlm.nih.gov/medlineplus/addisonsdisease.html (last visited July 16, 2007). Dr. Mahmood's

---

kidneys. These glands are part of your endocrine system, and they produce hormones that give instructions to virtually every organ and tissue in your body. In Addison's disease, your adrenal glands produce too little cortisol, which is one of the hormones in a group called the glucocorticoids. Sometimes, Addison's disease also involves insufficient production of aldosterone, one of the mineralocorticoid hormones. Addison's disease can be life-threatening. Also called adrenal insufficiency or hypocortisolism, Addison's disease can occur at any age, but is most common in people ages 30 to 50. Treatment for Addison's disease involves taking hormones to replace the insufficient amounts being made by your adrenal glands.

Mayo Clinic, Addison's Disease, http://www.mayoclinic.com/ health/addisons-disease/DS00361 (last visited July 16, 2007).

[10]There is no indication in the record whether this testing was actually done. The Court notes that Dr. Michelson's comment could indicate that Plaintiff told him she had been diagnosed with Addison's Disease, but that Dr. Michelson had not seen test results, or that Dr. Michelson had been informed by another doctor that test results were done, but the results were not available.

records have a check-box for adrenal insufficiency. [Tr. 196, 201, 206, 291, 296, 315]. On the following dates, Dr. Mahmood did not check the box for adrenal insufficiency, indicating that Plaintiff does not suffer from adrenal insufficiency: January 28, 2003; June 11, 2003; October 17, 2003; August 18, 2004; February 9, 2004; and October 13, 2004. [Id.]. Accordingly, the Court finds that Dr. Mahmood never diagnosed Plaintiff with adrenal insufficiency, also known as Addison's Disease. National Library of Medicine, MedlinesPlus: Addison's Disease.

The burden is on the Plaintiff to provide medical evidence which shows that she has an impairment which is disabling. 20 C.F.R. § 220.45. This Court has reviewed the entire medical record, and there is no evidence to controvert the ALJ's finding that Plaintiff is not presently disabled based on Addison's Disease. Accordingly, the ALJ's determination must be affirmed.

### 3. Heat Problems

Plaintiff claims she is disabled because of heat problems. [Tr. 55]. After a thorough review of the record, the Court finds that there is only one reference to heat. Dr. Robert E. Burr, M.D., completed a RFC assessment form regarding Plaintiff. He specifically stated that Plaintiff could have unlimited exposure to heat. [Tr. 262-269]. No further evidence exists pertaining to heat, and, indeed, Plaintiff did not appear to assert this issue explicitly in her pleadings. Accordingly, the Court finds that Plaintiff has failed to carry her burden of providing medical evidence that she suffers from an impairment based upon heat issues. See 20 C.F.R. § 220.45. As such, the ALJ did not err in failing to include "heat problems" in his written determination.

In sum, the ALJ properly determined that Plaintiff is not disabled by a human growth hormone deficiency and/or a dysfunctional pituitary gland, Addison's Disease, or heat problems.

### D. Residual Functional Capacity

Plaintiff argues the ALJ's assessed RFC is not supported by substantial evidence and that the ALJ erred by incorrectly assessing the impact of Plaintiff's mental limitations on her ability to work. [Doc. 17]. The Commissioner argues that substantial evidence exists to support the ALJ's assessed RFC and subsequent finding that Plaintiff could return to her past relevant work as a traffic clerk or customer courtesy clerk. [Doc. 19]. The ALJ considered Plaintiff's impairments of record and found that she retains the RFC to perform light work. [Tr. 27]. Further, the ALJ determined that Plaintiff could still perform her past relevant work as a traffic clerk and customer courtesy clerk, based upon her RFC. [Id.].

RFC is the most a claimant can do, despite her limitations. 20 C.F.R. § 404.1545 (a)(1). In determining RFC, the ALJ must consider a claimant's ability to meet physical, mental, sensory, and other requirements of employment. 20 C.F.R. § 404.1545 (a)(4). If a claimant has more than one impairment, the Commissioner is charged with considering all of the medically determinable impairments, including those that are not severe (as defined in the regulations), when determining a claimant's RFC. 20 C.F.R. § 404.1545 (a)(2).

As this Court found earlier, Plaintiff did not suffer from a mental impairment which was "severe" according to the regulations. However, the ALJ found that Plaintiff did suffer from a mental impairment and a growth hormone problem. The record also reflects that the ALJ considered these impairments when he determined her RFC: "In assessing residual functional capacity, the Administrative Law Judge has considered the claimant's subjective allegations. However, the evidence is clear that the claimant's acute symptoms and problems improved with appropriate treatment. . . ." [Tr. 26]. He also determined that her physical impairments allowed her to return

to her past relevant work. [Id.]. As such, Plaintiff's argument that the ALJ did not consider these impairments is without merit. See Bingaman v. Comm. of Soc. Sec., 186 Fed. Appx. 642, at *647, 2006 WL 1827616, at **5 (6th Cir. June 29, 2006) (holding that the ALJ is responsible for determining the RFC based on the relevant evidence and, so long as adequate explanations are given, the ALJ does not err by valuing some opinions over others). Further, Plaintiff's argument that mental impairments were not adequately assessed in conjunction with her RFC fails because the ALJ thoroughly discussed his findings regarding her alleged mental impairments and made his decisions accordingly. [Tr. 21-28].

Plaintiff's secondary argument is that the ALJ erred by finding that Plaintiff could return to her past relevant work of traffic clerk or customer courtesy clerk. The Commissioner argues that the record supports the ALJ's determination.

Past relevant work is work experience which occurred in the most recent fifteen years and was not for brief periods of time. 20 C.F.R. §§ 404.1565(a), 416.965(a). Within the past fifteen years, Plaintiff has worked as a customer courtesy clerk, site tech, and a traffic clerk. [Tr. 56]. The ALJ determined that Plaintiff could no longer perform her position as a site tech because the physical requirements would exceed her assessed RFC. [26-27].

Dr. Abraham, found that Plaintiff could perform up to medium exertion work. [Tr. 263]. Dr. Abraham further determined that Plaintiff had only mild limitations to activities of daily living. [Tr. 245-258]. Moreover, he stated that Plaintiff, "[g]enerally appears to be functioning w/o marked mental limitations." [Id.]. On the RFC form which he completed, Dr. Abraham found that Plaintiff was "not significantly limited" in eleven out of twenty areas and only "moderately limited" in nine

areas. [Tr. 259-261]. Dr. Abraham did not assess Plaintiff as suffering from any "marked" limitations. [Id.].

Dr. Jodie Castellani is a consultative examining doctor. [Tr. 239]. She found that Plaintiff was not significantly limited in regards to understanding and remembering work-related activities. [Tr. 244]. She also determined that Plaintiff was somewhat limited in her ability to sustain concentration and persistence and limited in her social interaction. [Id.]. Further, Dr. Castellani determined that Plaintiff is somewhat limited in regards to adaptation, but her medication appears to help. [Id.]. She also found that Plaintiff's grooming and appearance were adequate and that rapport was established. [Tr. 241]. Plaintiff was "extremely cooperative" with the interview and had adequate social skills. [Tr. 241, 243]. These findings belie Dr. Castellanni's opinion that Plaintiff was limited in her social interaction.

A traffic clerk position requires sedentary exertion. See United States Dictionary of Occupational Titles, 214.587-014 (4th ed. 1991). A customer service clerk position requires light exertion. See Id., at 299.367-010. There is no evidence in the record to indicate that Plaintiff has physical impairments which would prohibit her from performing sedentary or light work. As to her mental impairments, the Court finds that the expert opinions of record provide the requisite substantial evidence to support the ALJ's conclusion. Heston, 245 F.3d at 534 (quoting Richardson, 402 U.S. at 401). Accordingly, Plaintiff's RFC allows for her to return to the light exertion position of customer service clerk or the sedentary exertion position of traffic clerk. This work is past relevant work. [Tr. 56]. Therefore, the ALJ's determination that Plaintiff could perform her past relevant work is without error. As such, Plaintiff's argument that the ALJ erred at Step Four fails.

## V. Conclusion

For the reasons stated herein, it is hereby **RECOMMENDED**[11] that Plaintiff's motion for summary judgment [Doc. 16] be **DENIED** and that the Commissioner's motion for summary judgment [Doc. 18] be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[11]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).